**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF IDAHO**

| | |
|---|---|
| RONALD CLEMENT, and ACCESS NOW, INC. individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>ALBERTSONS, LLC and ABS ID-O, LLC,<br><br>Defendants. | Case No.<br><br>Filed Electronically |

**NATIONWIDE CLASS ACTION COMPLAINT**

COMES NOW, Ronald Clement and Access Now, Inc. (collectively "Plaintiffs") on behalf of themselves and all others similarly situated and allege as follows:

**INTRODUCTION**

1. Plaintiffs bring this nationwide action individually and on behalf of all others similarly situated against Albertsons, LLC and ABS ID-O, LLC (collectively "Defendants"), alleging violations of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq., (the "ADA") and its implementing regulations, in connection with accessibility barriers in the parking lots and paths of travel (collectively the "parking facilities") at grocery stores owned, operated, controlled and/or leased by Defendants ("Defendants' facilities").

2. Plaintiff Clement has a mobility disability and is limited in the major life activity of walking, which has caused him to be dependent upon a wheelchair for mobility.

3. Plaintiff ANI is a civil rights organization whose members, including Plaintiff Clement, have various disabilities, including mobility disabilities.

4. Plaintiff Clement has patronized Defendants' facilities and was denied full and equal access as a result of Defendants' inaccessible parking lots and paths of travel.

5. Plaintiff Clement's experiences are not isolated—Defendants have systematically discriminated against individuals with mobility disabilities by implementing an ADA compliance policy that consistently violates the ADA's accessibility guidelines and routinely result in undetected access barriers at Defendants' parking facilities.

6. Unless Defendants are required to remove the access barriers their compliance policy has caused and has allowed to persist, and unless Defendants are required to change their ADA compliance policy so that access barriers do not reoccur at Defendants' facilities, Plaintiff Clement, the members of Plaintiff ANI and the proposed Class will continue to be denied full and equal access to Defendants' facilities, and will be deterred from fully using Defendants' facilities.

7. Consistent with 42 U.S.C. § 12188, Plaintiffs seek a permanent injunction requiring:

a) that Defendants remediate all parking and path of travel access barriers currently existing at its parking facilities, consistent with the ADA;

b) that Defendants change their current compliance policy so that any parking facility access barriers are identified and remediated; and,

c) that Plaintiffs' representatives shall monitor Defendants' facilities to ensure that the injunctive relief ordered pursuant to Paragraph 5(a) and 5(b) has been implemented and will remain in place.

8. Plaintiffs' claims for permanent injunctive relief are asserted as class claims pursuant to Fed. R. Civ. P. 23(b)(2). Rule 23(b)(2) was specifically intended to be utilized in civil rights cases where the Plaintiffs seek injunctive relief for her own benefit and the benefit of a class of similarly situated individuals.

**THE ADA AND ITS IMPLEMENTING REGULATIONS**

9. The ADA was enacted over a quarter century ago and is intended to "provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities." 42 U.S.C. § 12101(b)(1).

10. The ADA broadly protects the rights of individuals with disabilities in employment, access to State and local government services, places of public accommodation, transportation, and other important areas of American life.

11. Title III of the ADA generally prohibits discrimination against individuals with disabilities in the full and equal enjoyment of public accommodations, 42 U.S.C. § 12182(a), and prohibits places of public accommodation, either directly, or through contractual, licensing, or other arrangements, from outright denying individuals with disabilities the opportunity to participate in a place of public accommodation, 42 U.S.C. § 12182(b)(1)(A)(i), or denying individuals with disabilities the opportunity to fully and equally participate in a place of public accommodation, 42 U.S.C. § 12182(b)(1)(A)(ii).

12. Title III further prohibits places of public accommodation from utilizing methods of administration that have the effect of discriminating on the basis of a disability. 42 U.S.C. § 12182(b)(1)(D).

13. Grocery stores, like Defendants, are public accommodations. 42 U.S.C. § 12181(7).

14. Title III and its implementing regulations define discrimination to include the following:

a) Failure to remove architectural barriers when such removal is readily achievable for places of public accommodation that existed prior to January 26, 1992, 28 CFR § 36.304(a) and 42 U.S.C. § 12182(b)(2)(A)(iv);

b) Failure to design and construct places of public accommodation for first occupancy after January 26, 1993, that are readily accessible to and usable by individuals with disabilities, 28 C.F.R. § 36.401 and 42 U.S.C. § 12183(a)(1);

c) For alterations to public accommodations made after January 26, 1992, failure to make alterations so that the altered portions of the public accommodation are readily accessible to and usable by individuals with disabilities, 28 C.F.R. § 36.402 and 42 U.S.C. § 12183(a)(2); and

d) Failure to maintain those features of public accommodations that are required to be readily accessible to and usable by persons with disabilities, 28 C.F.R. § 36.211.

15. Parking facilities – like Defendants' – must be constructed in compliance with the ADA. Additionally, parking facilities require ongoing, ADA-specific maintenance and monitoring because various external phenomena, like weather, thaw and freeze cycles, water filtration, soil compaction, and other issues can cause parking facilities to fall out of compliance with the ADA within a year.

16. The remedies and procedures set forth at 42 U.S.C. § 2000a-3(a) are provided to any person who is being subjected to discrimination on the basis of disability or who has reasonable grounds for believing that such person is about to be subjected to discrimination in violation of 42 U.S.C. § 12183.  42 U.S.C. 12188(a)(1).

17. The ADA also provides for specific injunctive relief, which includes, but is not limited to, the following:

> In the case of violations of sections 12182(b)(2)(A)(iv) and section 12183(a) of this title, injunctive relief shall include an order to alter facilities to make such facilities readily accessible to and usable by individuals with disabilities to the extent required by this subchapter.  Where appropriate, injunctive relief shall also include…modification of a policy…to the extent required by this subchapter.

42 U.S.C. § 12188(a)(2); 28 C.F.R. § 36.501(b).

**JURISDICTION AND VENUE**

18. This Court has federal question jurisdiction pursuant to 28 U.S.C. §1331 and 42 U.S.C. § 12188.

19. This Court has personal jurisdiction over Defendants because Defendants' principal place of business is in this district.

20. Venue in this judicial district is proper under 28 U.S.C. §1391(b)(1) in that this is the judicial district in which Defendants are headquartered.

**PARTIES**

21. Plaintiff, Ronald Clement, is and, at all times relevant hereto, was a resident of the State of Washington. Plaintiff Clement is a member of Access Now, Inc. As described above, as a result of his disability, Plaintiff Clement relies upon a wheelchair for mobility. He is therefore a member of a protected class under the ADA, 42 U.S.C. § 12102(2) and the regulations implementing the ADA set forth at 28 CFR §§ 36.101 *et seq*.

22. Plaintiff Access Now, Inc. ("ANI") is a non-profit organization that provides advocacy services on behalf of blind and other disabled individuals who are members of a protected class under the ADA, 42 U.S.C. § 12102(2) and the regulations implementing the ADA set forth at 28 CFR §§ 36.101 *et seq*. Plaintiff ANI has members representing 47 states, including residents of the State of Washington. Plaintiff ANI is engaged in seeking compliance with the ADA through education efforts to correct violations when found, and when necessary and appropriate, in litigation to require persons and entities in violation of the ADA to comply with the Act. One of the primary purposes of ANI is to represent its members to assure that public accommodations are accessible to and useable by its members, and to assure that its

members are not discriminated against because of their disabilities, or denied the benefits of the services, programs, and activities of public accommodations.

23. Defendant Albertson, LLC is the second largest supermarket chain in North America and is headquartered at 250 Parkcenter Blvd., Boise, ID.

24. Defendant ABS ID-O, LLC also is headquartered at 250 Parkcenter Blvd., Boise, ID.

25. Defendants may be served through their registered agent: CT Corporation System, 921 S. Orchard Street, Boise, ID 83706.

26. Defendants are public accommodations pursuant to 42 U.S.C. §12181(7).

**DEFENDANTS' ADA COMPLIANCE POLICY**

27. Defendants employ a uniform ADA compliance policy and practice at all of the stores they own, control and/or operate.

28. Defendants hire third-party consultants to design their stores and parking facilities so that, when built, they comply with the ADA.

29. After a store is designed and constructed, it is Defendants' policy and practice to not monitor or maintain the store's parking facility so as to identify architectural barriers and ensure that the parking facility is maintained in compliance with the ADA. Instead, it is Defendants' policy to rely on customer complaints to identify architectural barriers and ADA-related maintenance issues in Defendants' parking facilities and bring those issue to Defendants' attention.

30. This policy of relying on customers to identify maintenance issues and architectural barriers as they arise is in direct violation of 28 C.F.R. § 36.211, which, as stated

above, *obligates Defendants* to proactively monitor their parking facilities for ongoing compliance, and timely remediate any architectural barriers that may arise.

31. Furthermore, Defendants, as a matter of course, remodel their stores approximately every eight to ten years. It is Defendants' policy and practice to assume that if a store was designed and built in conformance with the ADA, it will remain in conformance with the ADA. Moreover, it is Defendants' policy and practice to only address ADA issues during a remodel if those issues are obvious and visually identifiable, or if customers have complained.

32. Again, by employing a system-wide policy and practice that assumes accessibility is maintained, that relies on customers to identify barriers, and that does not proactively monitor ongoing compliance, Defendants continually violate 28 C.F.R. § 36.211.

33. As demonstrated below, Defendants' policy of shifting their obligation to identify architectural barriers to customers, and assuming that their parking facilities remain in compliance after construction, results in architectural barriers that go unidentified and unremediated and that impede customer access to Defendants' stores.

**<u>DEFENDANTS' ADA COMPLIANCE POLICY RESULTS IN DISCRIMINATION</u>**

34. Plaintiff Clement has visited Defendants' stores located at 11330 51st Avenue NW, Gig Harbor, WA ("Subject Property 1"), 8611 Steilacoom Boulevard SW, Lakewood, WA ("Subject Property 2"), and 104 Military Road E, Spanaway, WA ("Subject Property 3") (collectively the "Subject Properties"), where he encountered excessive slopes in the purportedly accessible parking spaces and access aisles of each Subject Property.

35. Plaintiff Clement intends to return to the Subject Properties to shop, and to ascertain whether the Subject Properties remain in violation of the ADA.

36. Defendants' ADA compliance policy and practice has allowed these barriers to develop and persist undetected, and as a result of Defendants' non-compliance and its ADA compliance policy, Plaintiff Clement's ability to access and use Defendant's facilities was impeded.

37. Defendants' ADA compliance policy also has failed to identify and remediate numerous architectural in many other parking facilities owned, control and/or operated by Defendants.

38. For example, on Plaintiffs' behalf, investigators examined multiple locations owned, controlled and/or operated by Defendants, and found the following violations:

   a) 3420 Pacific Avenue SE, Olympia, WA

      i. The surfaces of one or more purportedly accessible parking spaces had slopes exceeding 2.1%;

      ii. The surfaces of one or more access aisles had slopes exceeding 2.1%; and

      iii. No spaces were designated as "van accessible" at one or more groups of purportedly accessible parking spaces.

   b) 4301 212th Street SW, Mountlake Terrace, WA

      i. The surfaces of one or more purportedly accessible parking spaces had slopes exceeding 2.1%;

      ii. A curb ramp located on the route to the building entrance had a running slope exceeding 8.3%; and

      iii. One or more signs designating spaces as "accessible" were mounted less than 60 inches above the finished surface or the parking area.

   c) 1434 Olney Street SE, Port Orchard, WA

      i. The surfaces of one or more purportedly accessible parking spaces had slopes exceeding 2.1%;

      ii. The surfaces of one or more access aisles had slopes exceeding 2.1%;

      iii. A portion of the route to the facility entrance had a running slope exceeding 5.0%; and

iv. One or more access aisles adjacent to a purportedly accessible parking space was less than 60 inches wide.

d) 370 SW Sedgwick Road, Port Orchard, WA

i. The surfaces of one or more purportedly accessible parking spaces had slopes exceeding 2.1%;

ii. The surfaces of one or more access aisles had slopes exceeding 2.1%;

iii. A curb ramp located on the route to the building entrance had a running slope exceeding 8.3%; and

iv. One or more signs designating spaces as "accessible" were mounted less than 60 inches above the finished surface of the parking area.

e) 11330 51st Avenue NW, Gig Harbor, WA

i. The surfaces of one or more purportedly accessible parking spaces had slopes exceeding 2.1%; and

ii. The surfaces of one or more access aisles had slopes exceeding 2.1%.

f) 8611 Steilacoom Boulevard SW, Lakewood, WA

i. The surfaces of one or more purportedly accessible parking spaces had slopes exceeding 2.1%;

ii. The surfaces of one or more access aisles had slopes exceeding 2.1%; and

iii. One or more signs designating spaces as "accessible" were mounted less than 60 inches above the finished surface of the parking area.

g) 104 Military Road E, Spanaway, WA

i. The surfaces of one or more purportedly accessible parking spaces had slopes exceeding 2.1%; and

ii. The surfaces of one or more access aisles had slopes exceeding 2.1%.

h) 13000 Aurora Avenue N, Seattle, WA

      i. The surfaces of one or more purportedly accessible parking spaces had slopes exceeding 2.1%;

      ii. The surfaces of one or more access aisles had slopes exceeding 2.1%;

      iii. The landing at the top of the curb ramp had a slope exceeding 2.1%;

      iv. One or more purportedly accessible spaces were not marked with required signs; and

      v. No spaces were designated as "van accessible" at one or more groups of purportedly accessible parking spaces.

   i) 2550 32nd Avenue W, Seattle, WA

      i. The surfaces of one or more purportedly accessible parking spaces had slopes exceeding 2.1%;

      ii. The surfaces of one or more access aisles had slopes exceeding 2.1%; and

      iii. A curb ramp located on the route to the building entrance had a running slope exceeding 8.3%.

39. Moreover, in 2015 Plaintiffs' counsel investigated the parking facilities of seven of Defendants' stores located in Idaho and found the following violations:

   a) 4700 North Eagle Road, Boise, ID

      i. The surfaces of one or more purportedly accessible parking spaces had slopes exceeding 2.1%;

      ii. The surfaces of one or more access aisles had slopes exceeding 2.1%;

      iii. No spaces were designated as "van accessible" at one or more groups of purportedly accessible parking spaces; and

      iv. One or more signs designating spaces as "accessible" were mounted less than 60 inches above the finished surface of the parking area.

   b) 10700 West Ustick Road, Boise, ID

      i. The surfaces of one or more purportedly accessible parking spaces had slopes exceeding 2.1%;

      ii. The surfaces of one or more access aisles had slopes exceeding 2.1%; and

    iii.    No spaces were designated as "van accessible" at one or more groups of purportedly accessible parking spaces.

  c)  909 East Parkcenter Boulevard, Boise, ID

    i.    The surfaces of one or more purportedly accessible parking spaces had slopes exceeding 2.1%;

    ii.    A portion of the route to the facility entrance had a running slope exceeding 5.0%; and

    iii.    One or more signs designating spaces as "accessible" were mounted less than 60 inches above the finished surface of the parking area.

  d)  1653 South Vista Avenue, Boise, ID

    i.    The surfaces of one or more purportedly accessible parking spaces had slopes exceeding 2.1%; and

    ii.    The surfaces of one or more access aisles had slopes exceeding 2.1%.

  e)  3614 West State Street, Boise, ID

    i.    The surfaces of one or more purportedly accessible parking spaces had slopes exceeding 2.1%.

  f)  5100 West Overland Road, Boise, ID

    i.    One or more signs designating spaces as "accessible" were mounted less than 60 inches above the finished surface of the parking area.

  g)  1520 North Cole Road, Boise, ID

    i.    The surfaces of one or more purportedly accessible parking spaces had slopes exceeding 2.1%;

    ii.    One or more signs designating spaces as "accessible" were mounted less than 60 inches above the finished surface of the parking area.

40.    Defendants were unaware of these violations until the *Moras v. Albertsons, LLC et al.*, 15-cv-93 (D. Idaho) action was filed because their ADA compliance policy failed to

identify these violations. As a result of the *Moras* litigation, Defendants remediated the accessibility barriers identified by Plaintiff's Counsel in that case.

41. Defendants have, however, failed to modify their ADA compliance policy as demonstrated by the ADA violations identified in Paragraph 38 above.

42. Defendants' failure to identify architectural barriers in their parking facilities, and Defendants' allowance of these architectural barriers to develop and persist has harmed and will continue to harm Plaintiff Clement, and has harmed and will continue to harm Plaintiff ANI's other members.

43. So long as the numerous architectural barriers at Defendants' facilities continue to exist, however, Plaintiff Clement will be deterred from returning to Defendants' facilities.

## CLASS ALLEGATIONS

44. Plaintiffs bring this class action, pursuant to Rules 23(a) and 23(b)(2) of the Federal Rules of Civil Procedure, on behalf of himself and the following nationwide class: all wheelchair users who have attempted, or will attempt, to utilize the parking facilities at all locations within the United States for which Defendants own and/or control the parking facilities.

45. Numerosity: The class described above is so numerous that joinder of all individual members in one action would be impracticable. The disposition of the individual claims of the respective class members through this class action will benefit both the parties and this Court.

46. Typicality: Plaintiffs' claims are typical of the claims of the members of the class. The claims of the Plaintiffs and members of the class are based on the same legal theories and arise from the same unlawful conduct.

47. Common Questions of Fact and Law: There is a well-defined community of interest and common questions of fact and law affecting members of the class in that they all have been and/or will be denied their civil rights to full and equal access to, and use and enjoyment of, Defendants' facilities and/or services due to Defendants' ADA compliance policy and Defendants' failure to make their facilities fully accessible and independently usable as above described.

48. Adequacy of Representation: Plaintiffs are adequate representative of the class because their interests do not conflict with the interests of the members of the class. Plaintiffs will fairly, adequately, and vigorously represent and protect the interests of the members of the class and have no interests antagonistic to the members of the class. Plaintiffs have retained counsel who are competent and experienced in the prosecution of class action litigation, generally, and who possess specific expertise in the context of class litigation under the ADA.

49. Class certification is appropriate pursuant to Fed. R. Civ. P. 23(b)(2) because Defendants have acted or refused to act on grounds generally applicable to the Class, making appropriate both declaratory and injunctive relief with respect to Plaintiffs and the Class as a whole.

**SUBSTANTIVE VIOLATION**

50. The allegations contained in the previous paragraphs are incorporated by reference.

51. Defendants' facilities were altered, designed, or constructed, after the effective date of the ADA.

52. Defendants' facilities were required to be altered, designed, and constructed so that they are readily accessible to and usable by individuals who use wheelchairs. 42 U.S.C.§ 12183(a).

53. Further, the accessible features of Defendants' facilities, which include the parking lots and paths of travel, are required to be maintained so that they are readily accessible to and usable by individuals with mobility disabilities. 28 U.S.C. § 36.211.

54. The architectural barriers described above demonstrate that Defendants' facilities were not altered, designed, or constructed in a manner that causes them to be readily accessible to and usable by individuals who use wheelchairs, and/or that Defendants' facilities were not maintained so as to ensure that they remained accessible to and usably by individuals who use wheelchairs.

55. Furthermore, the architectural barriers described above demonstrate that Defendants have failed to remove barriers, as required by 42 U.S.C. Section 12182(b)(2)(A)(iv).

56. Defendants' repeated and systemic failures to design, construct and alter facilities so that they are readily accessible and usable, to remove architectural barriers, and to maintain the accessible features of its facilities constitute unlawful discrimination on the basis of a disability in violation of Title III of the ADA.

57. Defendants' facilities are required to comply with the Department of Justice's 2010 Standards for Accessible Design, or in some cases the 1991 Standards 42 U.S.C. § 12183(a)(1); 28 C.F.R. § 36.406; 28 C.F.R., pt. 36, app. A.

58. Defendants are required to provide individuals who use wheelchairs full and equal enjoyment of their facilities. 42 U.S.C. § 12182(a).

59. Defendants have failed, and continue to fail, to provide individuals who use wheelchairs with full and equal enjoyment of their facilities.

60. Defendants have discriminated against Plaintiffs and the Class in that they have failed to make their facilities fully accessible to, and independently usable by, individuals who use wheelchairs in violation of 42 U.S.C. § 12182(a) as described above.

61. Defendants' conduct is ongoing, and Plaintiffs have been harmed by Defendants' conduct.

62. Unless Defendants are restrained from continuing their ongoing and continuous course of conduct Defendants will continue to violate the ADA and will continue to inflict injury upon Plaintiffs and the Class.

63. Given that Defendants have not complied with the ADA's requirements to make their facilities fully accessible to, and independently usable by, individuals who use wheelchairs, Plaintiffs invokes their statutory rights to declaratory and injunctive relief, as well as costs and attorneys' fees.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and the members of the class, pray for:

a. A declaratory judgment that Defendants are in violation of the specific requirements of Title III of the ADA described above, and the relevant implementing regulations of the ADA, in that Defendants' facilities, as described above, are not fully accessible to, and independently usable by, individuals who use wheelchairs;

b. A permanent injunction pursuant to 42 U.S.C. § 12188(a)(2) and 28 CFR § 36.501(b) which directs Defendants to take all steps necessary to remove the architectural barriers described above and to bring their facilities into full compliance with the requirements set forth in the ADA, and its implementing regulations, so that their facilities are fully accessible to, and independently usable by, individuals who use wheelchairs, and which further directs that the Court shall

retain jurisdiction for a period to be determined after Defendants' facilities come into compliance with the relevant requirements of the ADA to ensure that Defendants have adopted and are following an institutional policy that will in fact cause Defendants to remain fully in compliance with the law;

c. An Order certifying the class proposed by Plaintiffs, and naming Plaintiffs as class representatives and appointing their counsel as class counsel;

d. Payment of costs of suit;

e. Payment of reasonable attorneys' fees, pursuant to 42 U.S.C. § 12205 and 28 CFR § 36.505; and,

f. The provision of whatever other relief the Court deems just, equitable and appropriate.

Dated: November 30, 2016

Respectfully Submitted,

/s/ *Gabriel J. McCarthy*
Gabriel J. McCarthy (7516)
Attorney at Law
401 Front St.
Suite 302
Boise, ID 83702
Telephone: (208) 343-8888
Facsimile: (208) 345-9982

Benjamin J. Sweet
bsweet@carlsonlynch.com
Edwin J. Kilpela
ekilpela@carlsonlynch.com
Stephanie Goldin
sgoldin@carlsonlynch.com
CARLSON LYNCH SWEET KILPELA & CARPENTER, LLP
1133 Penn Avenue, 5th Floor
Pittsburgh, PA 15222
(p) 412 322-9243
(f) 412 231-0246

*Attorneys for the Plaintiffs and the Putative Class*